UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER R. HAWKINS,

                              Plaintiff

                                                                DECISION AND ORDER

-vs-
                                                                05-CV-6458 CJS

WEGMANS FOOD MARKETS, INC.,

                              Defendant

_____

APPEARANCES

For plaintiff:            Christopher R. Hawkins, Pro se
                          6 Erie Manor Lane, #3
                          Henrietta, New York 14467

For defendant:            Lucinda Odell Lapoff, Esq.
                          Harter Secrest & Emery LLP
                          1600 Bausch & Lomb Place
                          Rochester, New York 14604-2711

INTRODUCTION

        This is an action in which the plaintiff Christopher Hawkins ("plaintiff"),

proceeding *pro se*, alleges that his former employer, defendant Wegmans Food

Markets, Inc. ("defendant") discriminated against him, in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the Americans

With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by terminating his employment.

Now before the Court is defendant's motion [#26] for summary judgment.  For the

reasons that follow, the application is granted and this action is dismissed.

1

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to plaintiff.  Defendant owns and operates a chain of supermarkets.  Plaintiff is a Caucasian male with an unspecified learning disability.  Defendant employed plaintiff for slightly more than two years, from July 2002 until September 26, 2004, during which time plaintiff worked part-time in a customer-service position in the "Helping Hands" department, "assisting customers with their groceries and other packages in the parking lot." (Caterino Aff. ¶ 3).

Plaintiff was advised of defendant's various employment rules and policies when he was hired.  In that regard, defendant indicates that "customer service is the top priority" for employees. (Caterino Aff. par 5).  Defendant states that,

> [a]ny employee who does not service Wegmans' customers in a prompt, courteous and respectful manner is subject to immediate disciplinary measures.  This policy is taken very seriously by Wegmans. . . . Non-compliance by any employee with the Customer Service Policy or other work rules is typically handled with progressive discipline, depending upon the seriousness of the infraction.

*(Id.* at ¶ ¶ 5-6).  During the term of his employment with defendant, plaintiff was assisted by a Job Coach from the Rochester Rehabilitation Center, Inc..  Defendant cooperated with plaintiff's Job Coach, "and whenever possible arranged to have the Job Coach present with plaintiff during counseling sessions and when discipline was administered." (Caterino Aff. ¶ 4).

Defendant terminated plaintiff's employment on September 26, 2004, at which time plaintiff was 45 years of age.  Defendant states that plaintiff's employment was terminated because he had received "repeated counselings, warnings, and a

suspension with respect to his workplace conduct towards both co-workers and customers." (Caterino Aff. ¶ 3).  For example, on September 5, 2003, defendant issued plaintiff a written warning after he was involved in confrontations with three different customers.  In one of the incidents, plaintiff was accused of directing profanity toward the customer, though plaintiff denied doing so.  In another incident, plaintiff confronted a customer regarding the status of his or her vehicle's registration.  On October 8, 2003, defendant issued plaintiff a written warning after he allegedly "expressed frustration inappropriately" toward a customer and a co-worker.  On October 9, 2003, defendant issued plaintiff a written statement concerning problems that he was having with a co-worker, who had complained about plaintiff expressing his frustration inappropriately and in an improper tone of voice.  Plaintiff apparently admitted that his tone of voice reflected the fact that he was frustrated with certain aspects of his job.  On December 12, 2003, defendant issued plaintiff a warning, after a customer complained that plaintiff had picked up her child in order to move the child out of his way.  Plaintiff contends that he moved the child, who was standing near the store's doors, because he was concerned that she would run out into the parking lot and be injured. (Pl. Dep. 52). Defendant issued plaintiff another warning on January 21, 2004, after plaintiff allegedly made inappropriate comments in front of several elderly customers.  Plaintiff replied that he had merely been joking, and that he believed his supervisor had overreacted.

Then on January 30, 2004, defendant issued plaintiff a reprimand, accusing him of taking "foot warmers" from the store for his personal use, and leaving a note asking that the items be charged to the store.  Plaintiff contends, however, that he paid for the items.  Defendant issued plaintiff a written reprimand on February 6, 2004, after he

3

confronted a customer for allegedly parking in a sloppy manner.  As to this incident, plaintiff's supervisor stated that plaintiff improperly "took it upon himself to push an issue that should have been dealt with by management."  Plaintiff admits that he confronted the customer, but maintains that he was correct in doing so because the customer was at fault.  The written reprimand placed plaintiff on a one-week suspension from work, and further noted that plaintiff had received "several customer complaints in the past few months," and that "any further complaints w[ould] result in termination."

Subsequently, on May 24, 2004, defendant issued plaintiff another written warning after a female co-worker complained that she felt uncomfortable because plaintiff had left her a note with his telephone number, asking her to call him.  Plaintiff contends, though, that his note was not "sexual harassment,"and that his actions were not inappropriate. (Pl. Dep. 74).   On June 24, 2004, defendant issued plaintiff yet another written warning, after he allegedly failed to comply with defendant's "100% proofing policy," pursuant to which any customer, no matter what age, must provide identification when purchasing tobacco or alcohol products.  (Def. App. pp. 30-32). According to defendant, plaintiff acted disrespectfully toward a cashier and a manager after he was asked to show his identification because he was purchasing beer. Plaintiff, however, contends that defendant's policy in this regard is absurd and disrespectful, because he obviously appeared old enough to purchase alcohol. (Pl. Dep. pp. 44-46).  The written notice to plaintiff concerning this incident concluded by stating: "Chris has had numerous conversation notes [written counseling memos], written warnings and a suspension for various issues.  Chris needs to conform to our

4

policies and procedures effectively immediate [sic].  Any further infractions will result in termination." (Def. Appx. p. 34).

The final incident which led to the termination of plaintiff's employment again involved defendant's 100% proofing policy.  The incident occurred while plaintiff was purchasing cigarettes on September 26, 2004.  At that time a young female cashier asked plaintiff to show identification, and plaintiff flipped open his wallet, showed her his driver's license, then flipped the wallet closed again.  The cashier responded with words to the effect that she "needed to hold it" or "needed to see his thing," obviously referring to plaintiff's identification.  On this point, it appears that the cashier was required to enter plaintiff's date of birth into the cash register as part of the sale of tobacco products.  According to the cashier, in response to her comment that she needed to "see it" or "hold it," plaintiff joked,  "Not while we are at work, anyplace else would be ok."[1]  This remark by plaintiff upset her.  Additionally, plaintiff kept flipping his wallet open and shut, without giving her the chance to view his driver's license.

Jeanine Powell, one of defendant's managers, spoke with plaintiff concerning the incident, and reported the following:

> He had told me that when getting his license for proof of purchase of tobacco he was taking it in and out of his wallet without handing it to her to punch the date in the register.  He said he was kidding with her.  She then proceeded to tell [sic] she needed to hold it.  He then agreed that he told her another place and time he would respond to that about holding it.  She told him that wasn't what she meant and his responds [sic] was no fowl [sic] no harm.  He also agreed to that comment.

---

[1] The Court notes that following the incident described above, in which plaintiff had left a note for a female co-worker, defendant reviewed with him a copy of defendant's "Non Harassment Policy," which stated, in relevant part: "Sexual harassment includes, but is not limited to: Sexually oriented language, verbal abuse, jokes or 'kidding.'" (Def. Appx. p. 28).

Case 6:05-cv-06458-CJS-JWF   Document 32   Filed 11/29/06   Page 6 of 13

(Report of Jeanine Powell September 26, 2004).  Plaintiff agrees that the incident

occurred in the manner alleged:

> The clerk ask[ed] me for my driver['s] license and [I] got [it] out of my back
> pocket to show her my license and started to plac[e it] back in [my] wallet .
> . . and the clerk [asked] me to see my thing . . . I said wrong place and
> wrong time or I would [have] made a comment.  As I was walking away I
> said no harm and no foul.

(Def. Appx. p. 84).[2]  Plaintiff, however, disputes defendant's characterization of the

seriousness of the incident.

   In any event, defendant terminated plaintiff's employment as a result of the

incident, and in Misconduct/Discharge Summary Sheet, stated, in relevant part:

> [T]he claimant was discharged . . . because he failed to follow the
> company's 100% Proofing Policy, by not handing the service desk worker
> his ID immediately to her, when making a purchase of a pack of
> cigarettes. . . .  The claimant did not attempt to comply with the employer's
> expectation as he initially kept his ID in his wallet, flipping his wallet open
> quickly, for the service desk worker to see.  He eventually did hand his ID
> over to her in order for her to input his birthdate into the register. . . .  The
> claimant did not follow the company's 100% Proofing Policy, and made
> disrespectful comments to the service desk worker who was trying to
> follow proper procedures.

(Misconduct/Discharge Summary Sheet).

   Plaintiff subsequently filed an EEOC complaint, in which he alleged, in

conclusory fashion, that defendant discriminated against him because of his sex and

disability.[3]  The EEOC dismissed the charge and issued plaintiff a "right to sue" letter on

---

[2]At his deposition, plaintiff declined to answer various questions about the incident, and said, "I stand by my statement," referring to the this statement. (Pl. Dep. p. 89; *see also Id*. pp. 90-92)

[3]Plaintiff also applied for New York State unemployment benefits.  Defendant opposed the application, on the grounds that plaintiff had been discharged for misconduct.  Following an administrative hearing, at which defendant apparently did not appear, the Unemployment Insurance Appeal Board awarded plaintiff benefits, and concluded that plaintiff had not violated defendant's "100% proofing policy" when purchasing cigarettes.  However, this administrative determination, which was not subsequently

or about July 27, 2005.  Plaintiff commenced the subject action on September 7, 2005,

alleging, again in conclusory fashion, that defendant discriminated against him on the

basis of his race/color, sex, age, and disability, by terminating his employment.

Following discovery, defendant filed the subject motion for summary judgment.[4]

Defendant contends that plaintiff failed to exhaust his administrative remedies with

respect to his claims of race and age discrimination, because he did not include such

claims in his EEOC complaint.  Defendant further contends that plaintiff cannot

demonstrate a prima facie case of any type of discrimination, and that even if he could,

he cannot show that defendant's reason for terminating his employment was pretextual.

In response to defendant's motion, plaintiff submitted two separate affirmations, neither

of which raises any legal arguments, per se.[5]  Instead, plaintiff generally discusses why

he believes that defendant was wrong to terminate his employment.  For example,

plaintiff believes that it was improper for defendant's cashiers to ask him for proof of his

age when he bought beer or cigarettes: "The person at the register was younger than

me. . . .  I was 44 year[s] old at that time with a mustache and or beard and losing my

hair.  Gee, can anyone tell how old that plaintiff was at that time of day[?] The

defendant must be deaf and dum[b] and blind." (Pl. Resp. to Summary Judgment

---

reviewed by a court, has no collateral estoppel effect in this case. *See, Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 728 (2d Cir. 2001) ("[U]nreviewed decisions of state administrative agencies will not bar a subsequent de novo trial under Title VII in federal court.").

[4]Defendant served an *Irby* notice on the *pro se* plaintiff as required by Rule 56.2 of the Local Rules of Civil Procedure.

[5]The Court notes that while plaintiff's written submissions are somewhat difficult to follow and largely irrelevant to the legal issues in this case, his deposition transcript indicates that he is quite articulate when speaking.

Motion [#27] p. 4).  As for defendant's allegation that plaintiff made inappropriate comments of a sexual nature, plaintiff states that he "did not do anything wrong:" "[T]he plaintiff Christopher R. Hawkins did not do anything wrong.  If he did do something wrong he would be arrested and charged with a federal crime as a Level 1 or 2 or 3 sexual offender, and he did not do all of that above."[6] (Pl. Resp. to Summary Judgment Motion [#29] p. 3).  The Court has considered the parties' submissions and the entire record in this action.

ANALYSIS

*Rule 56*

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to

---

[6]Plaintiff's argument in this regard is irrelevant, since defendant does not claim that plaintiff committed a crime, or even that he violated the company's sexual harassment policy.  Instead, defendant contends that it terminated plaintiff's employment because he violated the 100% proofing policy and was discourteous to the cashier.

support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).  Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.[7]  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question.  Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d

---

[7]It is well settled that the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)(citations omitted).  Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987)(citations omitted).

Cir.1997)(citations and internal quotations omitted).  However, a plaintiff may not defeat

a motion for summary judgment merely by relying upon "purely conclusory allegations

of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998

(2d Cir. 1985), *cert. den*. 474 U.S. 829.

Plaintiff's discrimination claims must be analyzed using the three-tier burden-

shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v.Standard & Poors*, 50

F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*,

205 F.3d 1327 (2d Cir. 2000); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466

(2d Cir. 2001), *cert den*. 534 U.S. 993 (2001).  Under the first tier of the *McDonnell

Douglas* test, the plaintiff must establish a prima facie case.[8]  If the plaintiff establishes

a prima facie case,

> the burden shifts to the employer to articulate some legitimate,
> nondiscriminatory reason for the employee's discharge [or other adverse
> employment action].  At this stage, the employer need only articulate--but
> need not prove-- the existence of a nondiscriminatory reason for its
> decision. If the defendant carries this burden of production, the
> presumption raised by the prima facie case is rebutted, and the factual
> inquiry proceeds to a new level of specificity.  Once defendant meets its
> burden of production, the burden shifts back to plaintiff. Under the third
> tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of
> proving that the reason proffered by the employer is a pretext for unlawful
> discrimination.  In order to survive a motion for summary judgment,
> plaintiff must establish a genuine issue of material fact as to whether the
> employer's reason . . .  is false and as to whether it is more likely that a
> discriminatory reason motivated the employer to make the adverse
> employment decision.

---

[8]It is clear that "the burden of proof that must be met to permit an employment-discrimination
plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM
Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation
marks omitted).

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also,*

*Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

At the third tier of the McDonnell Douglas test, simply proving that the employer's

proffered reason was false may, or may not, establish the required proof of

discriminatory intent:

> The ultimate question is whether the employer intentionally discriminated,
> and proof that "the employer's proffered reason is unpersuasive, or even
> obviously contrived, does not necessarily establish that the plaintiff's
> proffered reason is correct. In other words, it is not enough to disbelieve
> the employer; the factfinder must believe the plaintiff's explanation of
> intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v.*

*Sanderson Plumbing Prods. Inc.*, 120 S.Ct. 2097, 2108-09 (2000)). In this regard, "[t]he

relevant factors . . . include the strength of the plaintiff's prima facie case, the probative

value of the proof that the employer's explanation is false, and any other evidence that

supports or undermines the employer's case." *Id.* (internal quotation marks omitted).

With these principles of law in mind, the Court will first consider plaintiff's claims

that defendant discriminated against him on the basis of his race and gender, in

violation of Title VII, and on the basis of his age, in violation of the ADEA. Title VII

"makes it unlawful for an employer to discriminate against any individual with respect to

the 'compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State*

*Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted),

*abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*,

461 F.3d 199 (2nd Cir. 2006).  The ADEA, on the other hand, prohibits discrimination

on the basis of age. 29 U.S.C. § 623.  To establish a prima facie case of discrimination,

a plaintiff must show four things: (1) he is a member of the protected class; (2) he is

qualified for his position; (3) he has suffered an adverse employment action; and (4) the

circumstances surrounding that action give rise to an inference of discrimination. *Abdu-*

*Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 466-67 (citations omitted).  Here, plaintiff

has not demonstrated a prima facie case of discrimination on the basis of his race, sex,

or age.  Even assuming, for the sake of argument, that plaintiff could establish the first

three elements of a prima facie case, there is absolutely no evidence from which one

could infer that defendant's decision to terminate plaintiff's employment had anything to

do with plaintiff's race, sex, or age.  Consequently, defendant is entitled to summary

judgment on plaintiff's Title VII and ADEA claims.

The Court will now consider plaintiff's claim that defendant discriminated against

him because of his learning disability.  The applicable law is well-settled:

> A plaintiff suing under the ADA for disability discrimination bears the
> burden of establishing a prima facie case. In so-called
> reasonable-accommodation cases, such as this one, the plaintiff's burden
> requires a showing that (1) plaintiff is a person with a disability under the
> meaning of the ADA; (2) an employer covered by the statute had notice of
> his disability; (3) with reasonable accommodation, plaintiff could perform
> the essential functions of the job at issue; and (4) the employer has
> refused to make such accommodations.

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 183 -184 (2d Cir. 2006) (citation and

internal quotations omitted).  With regard to the third element, a plaintiff must request

an accommodation, and the accommodation must be reasonable. *Id.* at 184

("[G]enerally, 'it is the responsibility of the individual with a disability to inform the

employer that an accommodation is needed.'") (quoting 29 C.F.R. pt. 1630, app. at 363 (2003); other citation omitted); *Id*. at 185 ("[T]o satisfy the third element of his prima facie case, [a plaintiff] also must show that the requested [accommodation] was a reasonable accommodation.")  In the instant case, plaintiff has not made any showing concerning the third and fourth elements listed above.[9]  In that regard, he does not allege, let alone provide evidence showing, that he requires any accommodation.  For example, plaintiff does not allege that his inability to meet defendant's expectations was the result of his disability.  To the contrary, and as amply demonstrated by his deposition testimony, he simply contends that defendant's expectations were unreasonable.  Moreover, he does not allege that he (or his job coach) requested any accommodation from defendant, and therefore, he cannot show that defendant refused to make an accommodation.  Consequently, defendant is entitled to summary judgment on the ADA claim.

## CONCLUSION

Defendant's motion for summary judgment [#26] is granted in its entirety and this action is dismissed.

SO ORDERED.

Dated: Rochester, New York
        November 28, 2006                    ENTER:


                                             /s/ Charles J. Siragusa
                                             CHARLES J. SIRAGUSA
                                             United States District Judge

---

[9]The Court will assume, for purposes of this motion, that plaintiff has a disability within the meaning of the ADA, though the nature of his alleged "learning disability" is unclear in the record.